UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN NORDGREEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SCOTTS VALLEY POLICE DEPARTMENT, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-02574-NW<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: ECF Nos. 21, 22 |

　　　　Plaintiff Justin Nordgreen sued the Scotts Valley Police Department ("SVPD"), the City of Scotts Valley ("City"), and three police officers, Trevor Hutchinson, Aaron Roberts, and Nicholas Stoeberl, in their individual and official capacities (collectively, Defendants) for using excessive force during a traffic stop. First Amend. Compl., ECF No. 20 ("FAC"). Defendants now move to dismiss Plaintiff's complaint and ask the Court to incorporate by reference the video footage of the traffic stop. Mot., ECF No. 21; Mot. for Incorporation by Reference, ECF No. 22.

　　　　Having considered the papers filed by both parties and the relevant law, the Court determined that oral argument was not required and vacated the motion hearing. L.R. Civ. 7-1(b). Defendants' motion to dismiss is GRANTED with leave to amend.

**I.　　BACKGROUND[1]**

　　　　Over a year prior to the traffic stop at issue, Nordgreen had a dispute with the City's school district regarding mask policies during the COVID-19 pandemic. In early 2022, Nordgreen asked the SVPD to arrest school officials for isolating his son for not wearing a mask. Nordgreen subsequently filed a civil lawsuit against the school district. During discovery, Nordgreen found

---

[1] The following facts are drawn from Plaintiff's First Amended Complaint. FAC, ECF No. 20.

out that the Chief of Police of the SVPD and the School District Superintendent exchanged text messages about Nordgreen and his family, and about "arresting Nordgreen for merely pledging to go to the media about his son's traumatic experiences at school during COVID." FAC ¶ 15.

Fast forward approximately one year, on the evening of March 17, 2023, Nordgreen drove down a main road in Scotts Valley. He turned down an alleyway into the back parking lot of a shopping center, where he noticed a police officer in a police car. Nordgreen made a U-turn and saw the police car turn around. As Nordgreen pulled back onto the street, the police car followed him. Nordgreen drove towards his home in Scotts Valley.

After a few minutes, Nordgreen noticed "a car with a bright light speeding up upon him and saw it turn on its emergency lights." *Id*. ¶ 20. Nordgreen alleged he could not safely pull over, so he decided to drive the short distance to his home. As he was pulling onto his street, the "officer activated his emergency horn and sirens and signaling he wanted Nordgreen to yield. Since there was no place to pull over and it was extremely dark, Nordgreen drove a short distance, activated his turn signal and turned into his driveway where his motion activated flood light came on." *Id*. ¶ 21.

Nordgreen parked, exited his car, and started to walk up his driveway. Nordgreen saw a person standing in his driveway, who was later identified as a police officer.[2] The police officer asked Nordgreen why he did not pull over. Nordgreen attempted to explain that he felt there had been no safe place to pull over. The officer asked Nordgreen to provide his license in a raised voice, however, "[t]his conduct scared Nordgreen because he suspected that this individual was armed so he remained still with his hands up." *Id*. ¶ 25. The officer and Nordgreen spoke for about five minutes, during which the officer again asked Nordgreen for his license and Nordgreen contested that the officer properly pulled him over. Nordgreen also "inform[ed] the police officer that he was out of his jurisdiction and asked him what he was doing." *Id*. ¶ 33.

A few minutes later, a second police car with a K-9 unit pulled up to Nordgreen's house.

---

[2] Although Nordgreen alleges that the police officer did not identify himself until later in their conversation, Nordgreen also states that he had seen the police car in the shopping center lot and that a police car followed him home with the car's emergency lights and later siren activated.

2

The first officer explained to the second officer that Nordgreen was not cooperating because Nordgreen had yet to provide his license. Nordgreen heard the police dog barking "wildly," scaring him; he "was so terrified at this point that he had trouble speaking." *Id*. ¶ 36.

Nordgreen informed the officers that he was going to reach into his right rear pocket for his phone so that he could record the situation. The two officers ordered Nordgreen to not to reach into his pocket. Nordgreen complied under "duress" and then told the officers he feared for his safety.

Soon after, a third police car pulled up to Nordgreen's house. The officer, Sergeant Roberts, asked Nordgreen to walk to the top of the driveway with his hands raised. Another officer had a gun pointed at Nordgreen while he walked, though Nordgreen was not aware of the officer with the gun at the time.

Eight minutes into the situation, the officers informed Nordgreen that he was being detained, patted him down, and handcuffed him. Nordgreen was told that he was being arrested for failure to yield and failure to follow instructions from a police officer. Nordgreen was placed in the back of a police car, where he was detained for about 45 minutes.

Sergeant Roberts then "began looking into [Nordgreen's] car windows." *Id*. ¶ 51. Nordgreen alleges that he did not give Sergeant Roberts permission to look into the car windows, and states "there was nothing in plain sight indicating criminal activity that would allow the officers to search Nordgreen's vehicle without permission or a warrant." *Id*. Shortly after, Nordgreen "invoked his fifth amendment rights and asked for a lawyer." *Id*. ¶ 52. The officers asked him to step out of the car and to undergo a series of field sobriety tests, despite the fact that Nordgreen did not appear intoxicated. Nordgreen complied. The officers asked Nordgreen a "series of questions despite the fact that he had invoked his right to remain silent. No officer read Nordgreen his Miranda rights." *Id*. ¶ 55. After further sobriety tests and discussions with the officers, Nordgreen was released.

On or about June 14, 2024, Nordgreen asked the Santa Cruz County District Attorney's office about the status of any criminal charges against him and was informed that criminal charges were never filed.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the [plaintiff]." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. REQUEST FOR JUDICIAL NOTICE

Defendants ask the Court to incorporate by reference body worn camera footage from Officers Stoeberl, Roberts, and Hutchinson on March 17, 2023, as referenced by Plaintiff in the FAC. ECF No. 22. Courts may consider "documents incorporated by reference" in the complaint. *Patel v. Cuccinelli*, No. 3:17-cv-00860-JD, 2019 WL 3536332, at *2 (N.D. Cal. Aug. 2, 2019). Here, the Court incorporates by reference the footage Plaintiff relied upon in his FAC. Plaintiff additionally attached as an exhibit to the FAC a still image of the referenced body worn camera footage. *See* FAC, Ex. 1.

## IV. DISCUSSION

Plaintiff brings five claims under 42 U.S.C. § 1983: (1) violation of the First Amendment; (2) violation of the Fourth Amendment for excessive force; (3) violation of the Fourth Amendment by Defendants Roberts and Stoeberl for failure to intervene; (4) violation of the Fourth Amendment by Defendants Hutchinson, Roberts, and Stoeberl for unreasonable search and seizure; and (5) *Monell* and supervisor liability. Defendants move to dismiss all of Plaintiff's claims.

### A.  First Amendment – Retaliation

Plaintiff alleges that Defendants violated his First Amendment rights by retaliating against him by illegally stopping him, using excessive force, and preventing him from recording the incident. "To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the

4

protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)).  "To ultimately 'prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."'" *Id*. (quoting *Nieves v. Bartlett*, 581 U.S. 391, 398 (2019).  Plaintiff fails to establish such a "causal connection" between the "retaliatory animus" and Plaintiff's injuries.  Plaintiff alleges only that the officers' actions were "directly motivated by the Plaintiff's free speech activities," but does not identify what those free speech activities refer to.  To the extent that Plaintiff bases his theory of retaliation on his prior lawsuit against the school district, Plaintiff has failed to establish any facts that connect that lawsuit to the officers involved in the traffic stop at issue here.  Plaintiff has not identified any facts showing that the officers knew about the prior lawsuit or that they have any animus stemming from it.  The Court GRANTS Defendants' motion to dismiss Count 1.

### B. Fourth Amendment Claims – Excessive Force, Failure to Intervene, and Unreasonable Search and Seizure

Nordgreen alleges that Defendants violated his Fourth Amendment rights by using excessive force, failing to intervene when fellow officers were using excessive force, and unreasonably searching his vehicle.  The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV.  This "protects two types of expectations, one involving 'searches,' and the other 'seizures.'  A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.  A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  For each of his Fourth Amendment claims, Plaintiff must amend his complaint to allege facts with greater specificity.  To the extent Nordgreen argues that his traffic stop was pre-textual or lacked probable cause, he must specifically allege so, and provide detailed facts to support those claims.

In order to succeed on a Fourth Amendment claim for excessive force, Nordgreen must

show that the officers' force was unreasonable. Nordgreen has not shown that force was actually used, nor that he was aware of the use of force at the time of the incident. Plaintiff should draw upon the now incorporated body worn camera footage and specify the timestamp of the footage that he references.

Plaintiff's claim for failure to intervene is derivative of his excessive force claim. Nordgreen must provide a factual foundation in an amended excessive force claim and must build upon those facts to state a claim for failure to intervene.

Nordgreen also does not plead facts with adequate specificity to support an unreasonable search and seizure claim. The FAC provides no indication of what or where the officers searched. While Plaintiff mentions that Officer Roberts officers looked into his car window, Nordgreen does not connect those facts to the cause of action itself. Nowhere in the complaint does Nordgreen allege that Officer Roberts or any officer entered his car or that any of his property was seized. Plaintiff must provide specific facts to support his unlawful search and seizure claim.

The Court GRANTS Defendants' motion to dismiss Counts 2, 3, and 4.

### C.  *Monell* and Supervisory Liability

Plaintiff alleges that the individual Defendants' actions were directed, encouraged, and ratified by the City and SVPD as part of a policy to "carry out or tolerate unlawful detentions" or arrests without probable cause, among other actions. FAC ¶ 93. "To establish municipal liability under *Monell* [*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)], [plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). "*Monell* liability for an improper custom or practice cannot be predicated on isolated or sporadic incidents and instead must be so persistent and widespread that the custom or practice constitutes a permanent and well settled city policy." *Lopez v. City & Cnty. of San Francisco*, No. 25-CV-04390-LB, 2025 WL 2223431, at *3 (N.D. Cal. Aug. 5, 2025) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). Plaintiff has not sufficiently alleged that the municipality had a policy, that the policy amounted to deliberate indifference to his First and Fourth Amendment rights, and

that the policy instigated the alleged violations. Establishing *Monell* liability is a high bar. If Plaintiff elects to proceed with this theory, he must plead substantially more facts regarding the municipality's policy and involvement to support his claim.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. To the extent that Plaintiff argues that the City or SVPD failed to supervise or monitor the individual Defendants, or is otherwise liable under a *respondeat superior* theory, those claims cannot proceed.

The Court GRANTS Defendants' motion to dismiss Count 5.

## V. MOTION TO STRIKE

Defendants ask the Court to strike paragraphs ¶¶63, 64, and 67-69 of the FAC which reference Plaintiff's Public Records Act request. It is not yet evident whether Plaintiff's Public Records Act allegations are immaterial to the issues in this case. Fed. R. Civ. Pro. 12(f). Given that motions under Rule 12(f) are disfavored, as well as that Rule 15(a)(2) requires that courts "freely give leave [to amend] when justice so requires," Plaintiff's allegations will be considered on the merits and Defendants' motion to strike is denied.

## VI. CONCLUSION

Defendants' motion to dismiss is GRANTED with leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (pursuant to Rule 15(a), leave to amend "should be freely granted when justice so requires," keeping in mind the underlying purpose of Rule 15 is "to facilitate decision on the merits, rather than on the pleadings or technicalities.") (en banc) (internal quotes and ellipses omitted). Plaintiff shall file a second amended complaint within 21 days from this Order.

**IT IS SO ORDERED.**

Dated: November 12, 2025

Noël Wise
United States District Judge