UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUSTIN NORDGREEN,

Plaintiff,

v.

SCOTTS VALLEY POLICE
DEPARTMENT, et al.,

Defendants.

Case No. 25-cv-02574-NW

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 40

Plaintiff Justin Nordgreen sued the Scotts Valley Police Department ("SVPD"), the City of Scotts Valley ("City"), and three police officers, Trevor Hutchinson, Aaron Roberts, and Nicholas Stoeberl, in their individual and official capacities (collectively, Defendants) for using excessive force and prolonging a traffic stop. Before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint ("SAC"). ECF No. 40. Having considered the papers filed by both parties and the relevant law, the Court determined that oral argument was not required and vacated the motion hearing. L.R. Civ. 7-1(b). Defendants' motion to dismiss is GRANTED.

## I.   BACKGROUND

The Court assumes familiarity with the background and procedural history of this case. *See* ECF No. 38.

On November 12, 2025, the Court granted Defendants' motion to dismiss Plaintiff's first amended complaint ("November 2025 Order"), and permitted Plaintiff leave to file an SAC. ECF No. 38. The Court additionally granted Defendants' request to incorporate by reference body worn camera footage from Officers Stoeberl, Roberts, and Hutchinson. *Id*.

In the November 2025 Order, the Court held that Plaintiff had failed to allege facts that supported his theory that the officers' actions during the traffic stop were spurred by "retaliatory

animus." This allegation served as the undercurrent for each of Plaintiff's claims. The Court found that, to the extent Plaintiff asserted that his traffic stop was pre-textual or lacked probable cause, he had failed to allege that theory with specificity and had not provided detailed facts to support those claims.

In addition to Plaintiff's failure to demonstrate a lack of probable cause or support his retaliatory animus theory, the Court identified specific deficiencies in Plaintiff's pleadings. For his Fourth Amendment claim for excessive force, the Court held that Plaintiff had not shown that force was actually used against him, nor that Plaintiff was aware of any alleged use of force at the time of the incident. As to Plaintiff's *Monell* and supervisory liability claim, the Court found that Plaintiff had not sufficiently alleged that the municipality had a policy, that the policy amounted to deliberate indifference to Plaintiff's First and Fourth Amendment rights, and that any such policy instigated the alleged violations.

In the SAC, Plaintiff maintains the same five claims against Defendants. Plaintiff brings claims under 42 U.S.C. § 1983: (1) violation of the First Amendment; (2) violation of the Fourth Amendment for excessive force; (3) violation of the Fourth Amendment by Defendants Roberts and Stoeberl for failure to intervene; (4) violation of the Fourth Amendment by Defendants Hutchinson, Roberts, and Stoeberl for unreasonable search and seizure; and (5) *Monell* and supervisor liability. Defendants move to dismiss all Plaintiff's claims.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the [plaintiff]." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    DISCUSSION

Plaintiff has failed to cure the deficiencies the Court identified in the November 2025 Order.

United States District Court
Northern District of California

2

### A.    First Amendment – Retaliation

Plaintiff contends that Defendants retaliated against him after he "petition[ed] the government for redress by seeking help from the SVPD for the violations of his son's constitutional rights by Scotts Valley Unified School District." SAC ¶ 77. By "petitioning the government," Plaintiff refers to (1) his visit with SVPD in "early 2022 . . . to ask the officers to arrest six school officials for isolating his six-year-old son, akin to adult solitary confinement, for simply not wearing a mask;" (2) his conversation with SVPD Seargent Wowak; and (3) a "civil lawsuit filed against the school district." *Id*. ¶ 15. Plaintiff contends that SVPD officers retaliated against him for his "petitioning" actions by pulling him over "in the form of an illegal traffic stop," arresting him, conducting an "unreasonable 45 minute detention, not letting him ask questions of the officers or to challenge the stop, and [using] excessive force by pulling a gun on him for no objective factual reason." *Id*. ¶ 77.

"To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)). "To ultimately 'prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." ' " *Id*. (quoting *Nieves v. Bartlett*, 581 U.S. 391, 398 (2019)).

In the SAC, Plaintiff fails to establish such a "causal connection" between the officers' alleged "retaliatory animus" and Plaintiff's injuries. Simply, Plaintiff has not shown that the officers had any individual knowledge of Plaintiff's petitioning actions, nor that the officers were upset by Plaintiff's petitioning actions. While Plaintiff has alleged that he spoke with SVPD Seargent Wowak and the Chief of Police, Plaintiff has not shown that the individual officers involved in the traffic stop were made aware of those conversations. Plaintiff's facts demonstrate only that the SVPD Seargent and Chief of Police documented Plaintiff's visits in their usual course, not that Plaintiff's actions were discussed among the police department or shared with the

United States District Court
Northern District of California

3

individual officers.  Moreover, Plaintiff has alleged no facts that show that the SVPD Seargent, Chief of Police, or the individual officers were upset by Plaintiff's actions to such an extent that it "was a substantial or motivating factor" in the officers' conduct during the traffic stop.  *Capp*, 940 F.3d at 1053.

The Court GRANTS Defendants' motion to dismiss Claim 1.

### B.    Fourth Amendment Claims – Excessive Force, Failure to Intervene, and Unreasonable Search and Seizure

For his Fourth Amendment claims, Plaintiff alleges that Defendants violated his rights by using excessive force, failing to intervene when fellow officers were using excessive force, and unreasonably prolonging the traffic stop.

### 1.    Excessive Force and Failure to Intervene

Plaintiff contends that, during the traffic stop, Officer Hutchinson "aimed a loaded firearm in compressed ready position" at Plaintiff, "which resulted in [Plaintiff's] emotional injuries" and constitutes use of excessive force.  SAC ¶ 89.  Plaintiff asserts that the other officers should have intervened when Officer Hutchinson held out his gun.

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."  *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted); *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997).  "For purposes of the Fourth Amendment, a seizure occurs when a law enforcement officer, *by means of physical force or show of authority, in some way restrains* the liberty of a citizen."  *Id*. (emphasis added).  Claims that law enforcement officers used excessive force, (either deadly or non-deadly) during an arrest, investigatory stop, or other seizure of a citizen, fall under the Fourth Amendment analysis and its standard of objective reasonableness.  *Scott v. Harris*, 550 U.S. 372, 381-83 (2007); *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Fourth Amendment claims require a showing that: (1) a seizure occurred, (2) excessive force was used to seize the plaintiff, and (3) that the force applied

4

was objectively unreasonable under the circumstances. *Scott*, 550 U.S. at 381; *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 428 (2017).

The Ninth Circuit has held that in certain circumstances pointing a gun at an individual and threatening force constitutes excessive force. *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (holding that pointing a gun at plaintiff's head and threatening to kill him amounted to unreasonable force); *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (finding that "pointing a loaded gun at a suspect, employing the threat of deadly force, is use of a high level of force"). In each case, the excessive force was the "means of . . . some way restrain[ing] the liberty of a citizen." *Chan-Jimenez*, 125 F.3d 1326. In simple terms, the force was used to effectuate the seizure. *See e.g.*, *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (holding that there was a triable issue of fact on excessive force claim where plaintiff alleged that she was "ordered out of her vehicle by as many as six officers, many of whom pointed handguns and a shotgun directly at her," "was forced to her knees and handcuffed," and "officers continued to train weapons upon her while she was handcuffed on the ground" for ten minutes).

Here, however, Plaintiff is explicit in the SAC that he was not aware that a gun was drawn at the time of the traffic stop. Instead, it was not until months later that Plaintiff learned that Officer Hutchinson had his gun drawn. SAC ¶ 45 ("Unbeknownst to NORDGREEN, until he obtained body cam footage months later, at this time during the encounter his instincts had been correct that his life was at risk as the other officer, the second officer HUTCHISON, had drawn his service weapon on NORDGREEN."). The drawn gun could not have been a "means of" restraining Plaintiff if Plaintiff did not know Officer Hutchinson was holding a gun. *Chan-Jimenez*, 125 F.3d 1326; *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1013 (9th Cir. 2002) (holding that plaintiff alleged a seizure as a result of excessive force because "with a gun pointed at his head and then handcuffed, he reasonably believed he was not free to leave."). The Court finds that Plaintiff has not adequately alleged that "excessive force was used to seize" Plaintiff. *Scott*, 550 U.S. at 381.

As the Court stated in the November 2025 Order, Plaintiff's claim for failure to intervene

5

is derivative of his excessive force claim. *Sanders v. City of Pittsburg*, No. 18-CV-04326-SK, 2019 WL 11542388, at *4 (N.D. Cal. Sept. 26, 2019), *aff'd,* 14 F.4th 968 (9th Cir. 2021) ("Because Plaintiff's claims for failure to intervene and municipal liability are predicated on the claim for excessive force, those claims likewise fail."). Because Plaintiff has not provided a factual foundation to support his excessive force claim, he has likewise failed to state a claim for failure to intervene.

### 2.    Unreasonable Search and Seizure Claim

Plaintiff alleges that "[e]ight minutes into the ordeal," he was "told he was being detained, "was patted down and handcuffed," and then "locked in the back of Officer Stoeberl's squad car" for 45 minutes. SAC ¶ 50.[1] Plaintiff contends that detaining him for approximately 45 minutes constitutes an unreasonably prolonged traffic stop amounting to an unreasonable search and seizure.

"A seizure violates the Fourth Amendment when an officer 'extend[s] a traffic stop with tasks unrelated to the traffic mission, absent independent reasonable suspicion.'" *United States v. Williams*, No. 22-10052, 2023 WL 5925893, at *1 (9th Cir. Sept. 12, 2023) (quoting *United States v. Landeros*, 913 F.3d 862, 866 (9th Cir. 2019)). "This mission is limited to addressing the traffic violation that warranted the stop and attend[ing] to related safety concerns." *Id*. (citing *United States v. Evans*, 786 F.3d 779, 785 (9th Cir. 2015) (internal quotes and citations omitted). "Tasks not related to the traffic mission . . . are therefore unlawful if they 'add[ ] time' to the stop, and are not otherwise supported by independent reasonable suspicion of wrongdoing." *Id.* (quoting *Rodriguez v. United States*, 575 U.S. 348, 357 (2015)).

In the SAC, Plaintiff does not adequately support his unreasonable search and seizure claim. Plaintiff has not pleaded facts to raise a plausible inference that the officers did not have reasonable suspicion to justify the long traffic stop. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000) ("[R]easonable suspicion is enough to support an investigative traffic stop").

In fact, Plaintiff's own allegations indicate that the officers had reasonable suspicion to

---

[1] This series of events took place after Officer Hutchinson holstered his gun, which Plaintiff had not seen. SAC ¶ 50.

support an investigative traffic stop.  Plaintiff acknowledges that he "noticed a car with a bright light speeding up upon him and saw it turn on its emergency lights," but he did not pull over.  SAC ¶ 23.  Plaintiff recounts:

> Instead [Plaintiff] . . . traveled a short distance, turned left onto Hidden Glen Drive. . . . It was not until going up Hidden Glen when the officer activated his emergency horn and sirens signaling he wanted NORDGREEN to yield. Since there was no place to pull over and it was extremely dark, NORDGREEN drove a short distance, activated his turn signal and turned into his driveway.

*Id*.  Over the next eight minutes, Plaintiff and the officers "had a discussion about when the sirens were turned on," and Plaintiff "challenged the person's statements by stating there was no safe place to pull over and it agitated the person further." *Id*. ¶¶ 26, 29, 50.  Following, Officer Stoeberl told Plaintiff he "was stopped because of a headlight being out." *Id*. ¶ 37.  Plaintiff was then detained and placed in the squad car.  Once in the car, "Defendant Stoeberl stated to Plaintiff that he 'detected the odor of alcohol' on him when he was bending over near Plaintiff's rear end." *Id*. ¶ 52.  The officers next asked Plaintiff to participate in field sobriety tests, which the "officer claimed that he was going to put him through . . . due to his 'driving behavior.'" *Id*. ¶ 58.  These facts, as alleged by Plaintiff, indicate that, while the investigation added time to the traffic stop and seizure, the prolongation was lawful because it was "supported by independent reasonable suspicion of wrongdoing," specifically, that the officers stated that they identified a need to conduct a field sobriety test, investigate Plaintiff's broken tail light, and inquire into why Plaintiff failed to pull over. *Evans*, 786 F.3d at 786.  The Court finds that Plaintiff has failed to state a claim for an unreasonable search and seizure based on prolonged detention.

The Court GRANTS Defendants' motion to dismiss Claims 2, 3, and 4.

## C.      *Monell* Liability

Plaintiff alleges that the individual Defendants' actions were directed, encouraged, and ratified by the City and SVPD as part of "an unwritten department wide policy they regularly employ on innocent citizens" to "carry out or tolerate unlawful arrests without probable cause," among other actions.  SAC ¶ 115.

"To establish municipal liability under *Monell* [*v. Dep't of Soc. Servs.*, 436 U.S. 658

(1978)], [plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). "*Monell* liability for an improper custom or practice cannot be predicated on isolated or sporadic incidents and instead must be so persistent and widespread that the custom or practice constitutes a permanent and well settled city policy." *Lopez v. City & Cnty. of San Francisco*, No. 25-CV-04390-LB, 2025 WL 2223431, at *3 (N.D. Cal. Aug. 5, 2025); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (holding that the practice must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law."). Establishing *Monell* liability is a high bar.

In the SAC, Plaintiff has not sufficiently alleged that the municipality had a policy, that the policy amounted to deliberate indifference to his First and Fourth Amendment rights, and that the policy instigated the alleged violations. Plaintiff's only allegations in support of his claim are that the City's and SVPD's conduct was not limited to him, namely that Plaintiff is aware of Officer Stoeberl receiving "an award for his 'DUI enforcement efforts,'" and that he knows other citizens who have been pulled over "for ridiculous reasons." *Id*. ¶¶ 116-121. The incidents Plaintiff relies on are too sporadic to constitute "a permanent and well settled city policy." *Lopez*, 2025 WL 2223431, at *3. These allegations are insufficient to state a claim for *Monell* liability.

The Court GRANTS Defendants' motion to dismiss Claim 5.

## IV.   CONCLUSION

The Court GRANTS Defendants' motion to dismiss all of Plaintiff's claims.

Because Plaintiff was previously granted an opportunity to remedy the flaws identified but failed to do so, Plaintiff's claims are now dismissed without leave to amend. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1155 (9th Cir. 2021) (holding that district court has discretion to dismiss with prejudice where allegations of additional facts could not cure the deficiencies in the complaint).

/ / /

/ / /

The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: June 17, 2026

_____
Noël Wise
United States District Judge